**C.C., Appellant**

**v.**

**CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky; N.R., a minor child; and Z.C., a minor child, Appellees.**

No. 2010–SC–000395–DGE.

Supreme Court of Kentucky.

Jan. 20, 2011.

Bryan Keith Underwood, Maysville, KY, Counsel for Appellant.

Clayton Gilbert Lykins, Jr., Lewis County Attorney, Vanceburg, KY, Counsel for Appellee, Cabinet for Health and Family Services, Commonwealth Of Kentucky.

Kristen Dawn Nicholls–Francis, Greenup, KY, Counsel for Appellees, N.R., a minor child, and Z.C., a minor child.

Opinion of the Court by Justice
NOBLE.

Appellant, C.C., appeals from a disposition order of the Lewis Circuit Court removing her children from her custody based on a finding of neglect. This appeal presents the question whether the Rules of Civil Procedure, specifically the rules regarding discovery, apply before the beginning of the adjudication hearing in a dependency, abuse, and neglect proceeding. The trial court and Court of Appeals held that the Civil Rules do not apply to such proceedings before the adjudication hearing. This Court disagrees.

## I. Background

On May 15, 2009, Beth Arnold, a social worker with the Cabinet for Health and Family Services received a complaint that Appellant's then five-year old daughter had been abused. Arnold went to the girl's school to interview her. The girl revealed that she had been sent to school without breakfast and that her mother's boyfriend had spanked her the night before. The spanking resulted in bruising to her backside, neck, and ear. Arnold took photographs of the injuries.

Arnold then visited Appellant's residence to investigate further. A deputy sheriff accompanied her. When Arnold and the deputy sheriff arrived at the residence, Appellant refused to allow them in the house or to speak with her or her other child, a then three-year old son. Appellant screamed at Arnold and told her to leave the property, and described her daughter as a liar.

Later that day, Arnold, on behalf of the Cabinet, filed a pair of juvenile petitions in Lewis Family Court alleging that Appellant's children were abused or neglected. Arnold also requested and received an emergency custody order removing the children from Appellant's custody.

The next day, Arnold returned to Appellant's residence to take physical custody of the children. A Kentucky State Police Trooper went with her. When they arrived at the residence, Appellant came storming out and screamed that her daughter was a liar and thief and that she would "holler rape" if the trooper touched her. Despite this threat, the trooper arrested Appellant on an unrelated outstanding warrant. Arnold took the children into her custody.

The trial court held a temporary removal hearing on May 21.[1] At the hearing, Appellant admitted to making the derogatory statements about her daughter when she was arrested. She also testified that she suffered from ADHD and manic-depressive disorder, and that she had stopped taking her medication. Her boyfriend admitted that he had spanked the daughter on May 14. Arnold testified about her investigation, but she had not brought the photographs she had taken, so they were not introduced into evidence or reviewed by the court at that time. The trial court entered a temporary order re-

---

1. The hearing was originally set for May 18. Appellant asked that the hearing be rescheduled so that she could return with counsel.

uled so that she could return with counsel.

moving the children from Appellant's custody and set the case for an adjudication hearing

The day after the temporary removal hearing, Appellant's counsel served the County Attorney with interrogatories asking for a list of any witnesses that he intended to call, along with contact information and a summary of their intended testimony. He also served requests for production of documents seeking copies of any photographs of the children, any medical reports or medical opinions about the children since they entered the Cabinet's custody, any written reports or other documents concerning the allegations of dependency, abuse, and neglect, and any exhibits that the Commonwealth intended to introduce as evidence. Essentially, Appellant's counsel asked for the basic tools that he would have needed to build a defense for his client—basic information about the allegations against his client.

The request cited KRS 620.100 as making the Civil Rules applicable to the action. The County Attorney responded by arguing that the statute cited by Appellant's counsel only applied to the adjudication hearing itself, not pre-hearing matters. But the County Attorney also stated in his response, "The Commonwealth does, however, agree for the Court to enter an Order permitting counsel for the mother to inspect all records in the possession of social services pertaining to this petition."

The matter did not come before the trial court until the day on which the adjudication hearing was scheduled. Despite the Commonwealth's concession that Appellant could review the records, the trial court indicated some concern that Appellant would have access to confidential documents if such an order was entered. After a short hearing on the matter, the trial court rescheduled the adjudication hearing for about one month later and ordered the parties to research the issue and submit a brief within ten days.

Several days later, Appellant's counsel filed a memorandum of law, citing both KRS 620.100 and 610.080, in support of the discovery request. The trial court eventually denied the discovery request, holding "that KRS 620.100(3) applies to the adjudication hearing and not to pre-adjudicative matters." The court subsequently held adjudication and disposition hearings. The court found neglect as to both children and ordered that the children remain out of Appellant's custody.

The Court of Appeals affirmed, holding that nothing in the Uniform Juvenile Code requires application of the Civil Rules prior to the adjudication hearing. In so holding, the court noted that pre-hearing applicability of the rules would be impractical or impossible, given the short time frames for resolution of dependency, neglect, and abuse cases. The court also held that Appellant's rights were adequately protected by the appointment of counsel and her right to cross-examine witnesses, among other things. The court also stated:

> Furthermore, the record indicates that the Cabinet and the court agreed that [Appellant] would be permitted to examine the Cabinet's evidence *prior* to the adjudication hearing. [Appellant] ... could have examined the photographs ... and other documentary evidence had she chosen to do so, even though there is nothing in the statutory law or case law compelling the Cabinet to provide access to its records.

It is not clear, however, that this contention is correct. While the County Attorney did state in his response to the discovery request that he would agree to an order allowing Appellant access to the records, and the trial court stated orally that Appellant was entitled to see some of the

records, no such order was ever entered. In fact, the trial court refused to grant such an order and denied Appellant's motion for such an order.

This Court granted discretionary review to determine whether Civil Rule discovery prior to the adjudication hearing is allowed in a dependency, neglect, or abuse action.

## II. Analysis

■ Appellant argues that KRS 610.080(2) and 620.080(3) apply the Civil Rules to dependency, neglect, and abuse (DNA) actions. The Cabinet claims that those statutes only make the Civil Rules applicable to the adjudication hearing portion of a DNA action and that applying the discovery provisions of the rules would be impractical.

Before turning to the statutes discussed by the parties, this Court must first look to the Civil Rules themselves, which are enacted by this body. The power to prescribe court procedures lies with the Supreme Court. See Ky. Const. § 116 ("The Supreme Court shall have the power to prescribe ... and rules of practice and procedure for the Court of Justice."). Unfortunately, none of the parties, nor the lower courts, apparently thought to inquire whether the Civil Rules themselves had any say in the matter.

The Civil Rules, as enacted by this Court, define their own scope and applicability. See CR 1. Civil Rule 1(2) states, in relevant part: "These Rules govern procedure and practice in all actions of a civil nature in the Court of Justice except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules." Essentially, this makes the Civil Rules applicable to *all* civil actions, which includes DNA actions, while also recognizing that those rules may not be the best approach to some types of

cases, namely, "special statutory proceedings." Under CR 1, the Civil Rules still apply to such proceedings, but any procedures that the General Assembly prescribes control where they conflict with the Civil Rules. *West v. Goldstein*, 830 S.W.2d 379, 383 (Ky.1992) ("On the contrary, CR 1(2) only goes so far as to state the civil rules are not applicable in 'special statutory proceedings' wherein 'the procedural requirements of statute' are 'inconsistent' with 'procedures set forth in the Rules.' Thus special statutory proceedings replace Civil Rules only where they are 'inconsistent' or in conflict with the rule."); *see also, e.g., Upton v. Knuckles*, 470 S.W.2d 822, 825 (Ky.1971) (noting that "[v]arious provisions of the rules have been held applicable to election contest cases," despite their being special statutory proceedings); *Simmons v. Taylor*, 451 S.W.2d 385, 389 (Ky.1970) ("It will be observed that CR 1 provides that the civil rules do not govern procedure and practice in any special statutory proceeding to the extent that the rules are inconsistent or in conflict with the procedure and practice provided by the applicable statute."); *Hibberd v. Neil Huffman Datsun, Inc.*, 791 S.W.2d 726, 728 (Ky.App.1990) ("As such, its [a special statutory proceeding's] procedures prevail over the Civil Rules to the extent that they differ.").

Thus, Civil Rules, by their own terms, are applicable to DNA actions. The only question is whether some of the Civil Rules may be inapplicable under the special-statutory-proceedings exception. This requires us to first decide whether DNA actions are "special statutory proceedings." If they are, we must then decide whether there is a conflict between the statutory requirements and the Civil Rules that would prohibit the use of the discovery rules.

A "special statutory proceeding" is one that is "complete within itself having each procedural detail prescribed." *Swift & Co. v. Campbell*, 360 S.W.2d 213, 214 (Ky.1962). Actions relating to juveniles and parental rights outside the context of divorce are created by and described in detail in the Uniform Juvenile Code, KRS Chapters 600 to 645. Specifically, the procedures for DNA actions are laid out in detail in KRS Chapters 610 and 620. Thus, this Court concludes that they are "special statutory proceedings" and are not covered by the Civil Rules to the extent that those rules conflict with any statutorily prescribed procedures.

Though the Cabinet has not specifically argued that the Civil Rules conflict with the statutory requirements of the DNA statutes, it has done so implicitly by arguing that there is a potential conflict between the statutory time frames for DNA statutes and those included in the Civil Rules' discovery provisions. The Cabinet claims that the conflict makes it impractical, if not impossible, to apply the discovery provisions in a meaningful manner to DNA actions. This Court disagrees.

Admittedly, there may be some difficulty with applying the discovery provisions of the Civil Rules to DNA actions because of the short time frame within which such actions must be prosecuted. The normal progression of such an action is an ex parte emergency custody order or a dependency, neglect, or abuse petition, followed by a temporary removal hearing, then an adjudication hearing, and then a disposition hearing. The temporary removal hearing must occur within 72 hours of the emergency order or ten days of the petition, whichever is sooner. KRS 620.080. The adjudication hearing must occur within 45 days of the child's removal from the parents, unless the trial court extends that deadline. KRS 620.090(5).

The final disposition must then occur within 45 days of the adjudication, again unless the court extends the deadline. *Id.* Unless the judge extends a deadline, which may be done only "after making written findings establishing the need for the extension and after finding that the extension is in the child's best interest," *id.*, the adjudication hearing will be completed within 55 days and the entire DNA action will be completed within 100 days.

Discovery under the Civil Rules can take much longer than either of these time frames. For example, a party served with interrogatories or requests for production of documents has 30 days to respond. CR 33.01(2); 34.02(2). Interrogatories or requests served as little as 15 days after the removal of a child could result in the responses not being due until the day the adjudication begins.

These short time frames, however, do not present a conflict between the statutory requirements of DNA actions and the Civil Rules. Neither the Civil Rules nor the DNA statutes are rigid or blunt instruments. Both include provisions allowing for flexibility as to time frames—a safety valve, of sorts—which should alleviate much, if not all, of the perceived conflict between them.

For example, protective orders are available to combat abusive discovery requests. CR 26.03. And generally speaking, the trial court has the power to control the timing and sequence of discovery. CR 26.04. In most instances, where a time frame for responding to discovery may be too short, the court specifically has the flexibility to lengthen the time frame. *E.g.*, CR 33.01(2) ("The court may allow a shorter or longer time."); CR 34.02(2) ("The court may allow a shorter or longer time.") CR 36.01 (allowing 30 days to respond to a request for admission or "within such shorter or longer time as the

court may allow"). Of course, the responsibility for requesting and justifying a shorter time falls on the party seeking the discovery, and whether to allow the shorter time falls within the sound discretion of the trial court. Conversely, the responsibility for requesting a protective order or an order limiting discovery, say, under CR 26.04, falls on the party seeking the limit, and again, whether to allow such a limit lies in the sound discretion of the trial court. Similarly, the time limits in DNA actions can be expanded, though this is a more difficult proposition, requiring specific findings by the trial court. *See* KRS 620.090(5). Thus, there is no direct conflict between the statutes and rules.

That this is the case is further demonstrated by the General Assembly's express command that the Civil Rules apply to DNA actions. KRS 620.100, which is in the Dependency, Abuse, and Neglect Chapter of the Code, provides in part:

> The adjudication shall determine the truth or falsity of the allegations in the complaint. The burden of proof shall be upon the complainant, and a determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence. The Kentucky Rules of Civil Procedure shall apply.

KRS 620.100(3).

The trial court and Court of Appeals read this subsection as requiring only that the Civil Rules apply at the adjudication hearing. The portion of KRS 620.100 that makes the Civil Rules applicable only talks about the adjudication hearing. Thus, if KRS 620.100 were the only applicable statute, such a reading of the statute might be reasonable (though it still ignores the command of CR 1).

Of course, KRS 620.100 is not the only relevant statute. KRS 610.080 states that all juvenile proceedings shall be bifurcated into two separate hearings, an adjudication and a disposition. Subsection (2) of the statute states, in part, "For actions under KRS 610.010(2)(d) the Kentucky Rules of Civil Procedure shall apply." KRS 610.080(2).[2] An action under KRS 610.010(2)(d) is one "concerning any child living ... who allegedly ... [i]s dependent, neglected, or abused," which is described in more detail in KRS Chapter 620.

KRS 610.080(2) states that the Civil Rules apply to the "action." This encompasses not just the adjudication portion of the action, but the entire action, which also includes the temporary removal hearing and the disposition hearing. KRS 610.080(2), which the Court of Appeals referenced only in passing and the trial court mentioned not at all, has no exceptions. It does not say only the trial portions of the

---

**2.** KRS 610.080 states, in its entirety:

> Juvenile proceedings shall consist of two (2) distinct hearings, an adjudication and a disposition, which shall be held on separate days unless the child, after consultation with an attorney, waives the right to a formal predisposition investigation report and moves that the hearings be held the same day. However, if the disposition is to be commitment, the child's waiver shall not be valid without the consent of the Department of Juvenile Justice or the cabinet.
>
> (1) The adjudication shall determine the truth or falsity of the allegations in the petition and shall be made on the basis of an admission or confession of the child to the court or by the taking of evidence.
>
> (2) Unless otherwise exempted, upon motion by any child brought before the court on a petition under KRS 610.010(1), or 610.010(2)(a), (b), or (c), the Rules of Criminal Procedure shall apply. All adjudications shall be supported by evidence beyond a reasonable doubt, unless specified to the contrary by other provisions of KRS Chapters 600 to 645. For actions under KRS 610.010(2)(d) the Kentucky Rules of Civil Procedure shall apply.

rules, *e.g.*, CR 38–53, apply to such actions. It says "the Kentucky Rules of Civil Procedure shall apply." Nor is subsection (2) discussing only the adjudication hearing, as KRS 620.100 could arguably be read. KRS 610.080(2)'s reference to the Civil Rules applying to the action has but one plain meaning: the Civil Rules—all of them—apply to DNA actions from beginning to end.

This Court recognizes that complying with the discovery provisions in a timely manner may be difficult at times, given the short time frames involved in a DNA action. Nevertheless, the Court perceives no inherent conflict between the Civil Rules and DNA statutes that would bar the applicability of the rules to DNA actions.

Perhaps inevitably, a conflict between the rules and the DNA statutes may arise in some situations. This Court is not willing to say there can never be a conflict. In those instances, because DNA actions are "special statutory proceedings," their time limits will trump those in the Civil Rules where a conflict arises. *See* CR 1(2) (stating that "the procedural requirements of the [special statutory proceedings] shall prevail over any inconsistent procedures set forth in the Rules").

Nevertheless, a participant in a DNA action is entitled to the benefit of the Civil Rules, including the discovery provisions, so long as there is no conflict with the Juvenile Code. Though this may not mean access to the full range of discovery tools, since a judge may or may not be convinced that a time frame needs to be changed, it means at least reasonable access to the discovery procedures.

Admittedly, this may require parties to go to court more often to resolve discovery disputes, especially early on in those circuits that have not previously allowed pre-adjudication hearing discovery. But this Court trusts that the trial courts of this Commonwealth are competent to resolve those disputes in a timely and reasonable manner.

## III. Conclusion

Appellant was improperly denied access to the discovery provisions of the Civil Rules. As such, Appellant was denied process to which she was statutorily due. Accordingly, the Court of Appeals' decision is reversed, the adjudication and disposition orders of the Lewis Family Court are hereby vacated, and this case is remanded to that court for further proceedings in accordance with this opinion.

All sitting. All concur.