RENDERED: JUNE 14, 2018
TO BE PUBLISHED

## Supreme Court of Kentucky FINAL

2016-SC-000180-DG DATE 7/6/18 Kim Redmon. DC

MELVIN HENSLEY, DANNY LAINHART,                APPELLANTS
JAMES D. FETTERS, WILLIAM ABNEY,
AND CHARLES BUSSELL ON BEHALF OF
THEMSELVES AND OTHERS SIMILARLY
SITUATED


ON REVIEW FROM COURT OF APPEALS
V.   CASE NOS. 2013-CA-000190, 2013-CA-000978, 2013-CA-000329, AND
2013-CA-000956
FAYETTE CIRCUIT COURT NO. 10-CI-03986


HAYNES TRUCKING, LLC; AND L-M                APPELLEES
ASPHALT PARTNERS, LTD, D/B/A ATS
CONSTRUCTION AND HARTFORD FIRE
INSURANCE CO.


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REINSTATING**

A group of plaintiffs, claiming for themselves and for others similarly

situated, brought the underlying action in the trial court for backpay and

statutory damages under Kentucky's prevailing-wage law, Kentucky Revised

Statute (KRS) 337.505-550; and the trial court granted their motion to certify it

as a class action under Kentucky Rule of Civil Procedure (CR) 23. The Court of

Appeals vacated the trial court's class-action certification order. On

discretionary review, we reverse the Court of Appeals' decision. We hold that

class action is available to plaintiffs seeking recovery under the state's prevailing-wage law and that the trial court did not abuse its discretion in certifying this lawsuit as a class action.

## I. BACKGROUND.

James Melvin Hensley and several other named plaintiffs[1] brought this action under CR 23 to recover back pay and statutory damages as authorized by KRS 337.505-550,[2] asserting that they were not paid prevailing wages, benefits, or overtime in connection with their employment as truck drivers for Haynes Trucking and L-M Asphalt Partners, Ltd., d/b/a ATS Construction, on various public-works projects. Hartford Fire Insurance Company is a party because it was the surety for the public-works performance bonds on these projects.

Slightly less than a year after filing suit, Hensley moved for class certification, and the trial court granted ATS and Haynes's joint motion for discovery associated with the class-certification question and issued an order compelling discovery depositions of the putative class representatives and set a briefing schedule on the class-certification question. ATS, Haynes, and Hartford eventually filed a joint response opposing Hensley's motion for class

---

[1] All plaintiffs are collectively called Hensley in this Opinion.

[2] In 2017, after Hensley performed the work that is the subject of this suit, the Kentucky General Assembly repealed KRS 337.505-550, the prevailing wage law at issue here. The new Act does not apply retroactively to eliminate these potential claims. 2017 Kentucky Laws Ch. 3 (HB3)

certification. The trial court then conducted a hearing on the class-certification motion, allowing all sides to present extensive oral arguments.

After the hearing, the trial court sustained Hensley's motion for class certification,[3] and we reproduce below the relevant portions of the trial court's order.

The trial court's "Findings of Fact" included:

1. Plaintiffs filed a Class Action Complaint alleging violations of Kentucky prevailing wage law and breach of contract against Defendants.
2. The class is definite, and members are ascertainable. With at least 139 members, and perhaps many more, the class is so numerous that joinder of all members is impracticable.
3. There are questions of law and fact common to the class. Specifically, all liability issues are common to the class, including whether the defendants were required to pay prevailing wages to truck drivers for the time spent on the site of public works projects.
4. The claims of the representative parties are typical of the claims of the class.
5. The representative parties will fairly and adequately protect the interests of the class. In their depositions they have shown an appreciation of the issues in this case. Furthermore, they have come forward to speak on behalf of current employees who may fear repercussions, including loss of their employment, should they come forward individually. This additional fact enhances their ability to represent the class.
6. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members. All legal issues are common and predominate.
7. Counsel for the Plaintiffs...are sufficiently experienced and qualified to serve as class counsel, and have demonstrated their knowledge of the law, procedure, and the requisite ability to fairly and adequately represent the interests of the class.

---

[3] After the trial court issued its written order granting class certification, Hartford filed a motion asking the trial court to clarify that the class certification order was entered only against Haynes and ATS. The trial court entered an amended order that was essentially a reproduction of its original order, but without Hartford as a defendant.

3

And its "Conclusions of Law" stated:

> The requirements of CR 23.01 have been met. The Plaintiffs have demonstrated that they also satisfy each of the elements of CR 23.02(c). The prosecution of separate actions by members of the class would create a risk of inconsistent adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. This is especially so since there is an absence of applicable Kentucky Appellate Court rulings on Kentucky's pervading (sic) wage law.

> A class action is the superior method to resolve the common issues in this case. What is not common is the extent of damages, if any, each of the plaintiffs may be entitled to. However, the Court can craft a method to resolve the individual damages determination if that is necessary. The Court hereby certifies a class of plaintiffs as follows:

>> All persons who were employed by Haynes Trucking, at any time since 1995, who have not been paid prevailing wages or proper overtime but who transported asphalt, gravel, sand and/or other road building materials to various locations on the site of public works projects in the Commonwealth, distributed road building materials from the truck bed in a controlled manner on the site of the project, unloaded asphalt directly into paving machinery at a specific regulated rate so that such machinery could lay asphalt concurrently on the site of the project, and/or loaded recyclable and non-recyclable materials in conjunction with other heavy machinery for removal of the same from the site of the project.

Haynes and ATS filed a timely joint notice of appeal from the class-certification order, and Hartford filed a separate notice of appeal of the same order. At the Court of Appeals, Haynes, ATS, and Hartford argued that the trial court lacked subject-matter jurisdiction to rule on class certification and that Hensley had not satisfied the legal requirements for certification under CR 23. A panel of the Court of Appeals concluded that Hensley had fallen short in

4

establishing the prerequisites of CR 23 to support a class action, *commonality*, and, therefore, vacated the trial court's order and remanded the case to the trial court for decertification of the class. In a separate concurring opinion, the judge posited that KRS 337.550(2) does not permit class action suits at all.

Hensley then sought discretionary review in this Court of the decision to decertify the class, and we granted discretionary review.

## II. ANALYSIS.

As a preliminary matter, both sides agree that federal law should guide this Court's analysis of the trial court's class-certification decision because CR 23 mirrors its federal counterpart, Federal Rules of Civil Procedure Rule (FRCP) 23.[4]

### A. Issues Reviewable in an Interlocutory Appeal are Limited.

This case comes to us by way of an interlocutory appeal. As we explained in *Breathitt County Bd. of Educ. v. Prater*, the general rule in appellate procedure is that only a trial court's final orders are appealable.[5] An exception to this general rule, an interlocutory appeal is a mechanism used to address less-than-final orders of a trial court of select issues.[6] One such issue that can

---

[4] "It is well established that Kentucky courts rely upon Federal caselaw when interpreting a Kentucky rule of procedure that is similar to its federal counterpart." *Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 105 (Ky. App. 2010) (citing *Newsome By and Through Newsome v. Lowe*, 699 S.W.2d 748 (Ky. App. 1985)); *see also* Kurt A. Philipps, Jr., 6 Ky. Prac. R. Civ. Proc. Ann. Rule 1, Comment 2 (Aug. 2017 update) ('The general pattern of the [Kentucky] Rules follows quite closely the mechanical and logical arrangement of the Federal Rules of Civil Procedure. The Kentucky Rules incorporate most of the fundamental concepts implicit in the Federal Rules.")

[5] 292 S.W.3d 883, 886 (Ky. 2009).

[6] *Id.*; *see also Baker v. Fields*, __ S.W.3d __, 2018 WL 1417660 (Ky. Mar. 22, 2018).

5

be reviewed by interlocutory appeal is a trial court's order granting or denying class-action certification. Specifically, CR 23.06 states, "An order granting or denying class action certification is appealable within 10 days after the order is entered."

Because of the strict parameters of interlocutory appeals, the only question this Court may address today is whether the trial court properly certified the class to proceed as a class action lawsuit. We must focus our analysis on this limited issue and in so doing scrupulously respect the limitations of the crossover between (1) reviewing issues implicating the merits of the case that happen to affect the class-certification analysis and (2) limiting our review to the class-certification issue itself. Most importantly, "As the certification of class actions....is procedural, *such process cannot abridge, enlarge, or modify any substantive right of the parties.*"[7] "The right of a litigant to employ the class-action mechanism...is a *procedural right only,* ancillary to the litigation of substantive claims."[8]

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be *considered*[9] to the extent–but only to the extent–that they are relevant to determining whether the

---

[7] 35A C.J.S. Federal Civil Procedure § 86 (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999)) (emphasis added); *see also Eisen v. Carlisle and Jacquelin,* 417 U.S. 156 (1974).

[8] 35A C.J.S. Federal Civil Procedure § 86 (citing *Parisi v. Goldman, Sachs & Co.,* 710 F.3d 483 (2d Cir. 2013)) (emphasis added).

[9] The use of the word *considered* means exactly what it says. Merits questions may be *considered,* not *conclusively determined.*

6

Rule 23 prerequisites for class certification are satisfied."[10] Stated differently, Rule 23 "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[11] Federal circuit courts have addressed the issue even more bluntly: "The determination [of] whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action."[12]

Several issues obscure the focus on whether the trial court correctly certified the class in this case. First, Haynes and ATS assert that the trial court did not have the subject-matter jurisdiction to certify the class for those claims that allegedly do not meet the circuit court's jurisdictional minimum dollar — amount-in-controversy,[13] arguing that, consequently, all those claims must be dismissed. Second, as the concurring opinion from the Court of Appeals suggests, we must determine if a class-action lawsuit is even available for Hensley to assert prevailing-wage claims as a class action. Third, Haynes and ATS argue that prevailing-wage law has a so-called *de minimis* limitation that essentially forecloses litigation to those whose claims are triflingly small.

---

[10] *Amgen v. Connecticut Retirement Plan & Trust Funds*, 568 U.S. 455, 465-66 (2013).

[11] *Id.* at 459.

[12] *Miller v. Mackey Intern., Inc.*, 452 F.2d 424, 427 (5th Cir. 1971); *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3rd Cir. 1970); *see Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968).

[13] *See* KRS 24A.120(1) (granting Kentucky District Courts "exclusive jurisdiction in: (1) Civil cases in which the amount in controversy does not exceed...$5,000...."); KRS 23A.010(1) (granting Kentucky Circuit Courts "original jurisdiction of all justiciable causes *not exclusively vested in some other court....*").

## 1.    *The trial court has subject-matter jurisdiction.*

Haynes and ATS argue that the trial court lacked subject-matter jurisdiction over the claims of some of the purported class members that fail to meet the jurisdictional minimum in controversy and, as a result, those purported class members' claims should be dismissed. As the basis for their argument, Haynes and ATS rely on the statement of the Court of Appeals in *Lamar v. Office of Sheriff of Daviess County* that, "We are of the same opinion with respect to our CR 23" as the United States Supreme Court's opinion in *Zahn v. International Paper Company*[14] of FRCP 23.[15]

The Court of Appeals in *Lamar* appears to have agreed with the U.S. Supreme Court about its following statements in *Zahn*:

> This distinction and rule that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in the federal courts were firmly rooted in prior cases dating from 1832, and have continued to be accepted construction of the controlling statutes....The rule has been applied to forbid aggregation of claims where none of the claimants satisfies the jurisdictional-amount....*It also requires dismissal of those litigants whose claims do not satisfy the jurisdictional-amount, even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court.*[16]

What undercuts Haynes and ATS's argument here is the fact that the U.S. Supreme Court later held in *Exxon Mobil Corp. v. Allapattah Services, Inc.* that

---

[14] 414 U.S. 291, 292-95 (1973).

[15] 669 S.W.2d 27, 31 (Ky. App. 1984).

[16] *Id.* (emphasis added). What *Lamar* actually holds is the following: "[W]ith respect to CR 23...the sums of the individual claims of...respective [plaintiffs] may not be aggregated in order to meet the jurisdictional amount requirements for an action to be brought in the circuit court and be maintained as a class action where *none* of the individual claims is equal to or exceeds the statutory jurisdictional amount." *Id.*

8

*Zahn* is no longer good law, having been overruled by 28 U.S.C. § 1367, the federal statute granting federal district courts supplemental jurisdiction over certain claims.[17]

In fact, because of the enactment of 28 U.S.C. § 1367, which completely undermines the holding in *Zahn*, the U.S. Supreme Court in *Exxon Mobil* held that in a class-action lawsuit, once one member of the class satisfies the jurisdictional amount-in-controversy requirement, a court may exercise supplemental jurisdiction over claims by class members that, by themselves, do not meet the jurisdictional amount-in-controversy requirement.[18] Simply stated, Haynes and ATS hang their entire subject-matter jurisdiction argument on a rule of law taken from a case that has been overruled. So their argument on this point fails to persuade us.

We are not at liberty on interlocutory appeal to dismiss some of the purported plaintiffs' claims. Haynes and ATS are asserting to us a different subject-matter jurisdiction question than the one we may answer on interlocutory appeal. The question that is appropriate for us to answer on interlocutory appeal is: Did the trial court have the requisite subject-matter jurisdiction to certify the class? Haynes and ATS would ask: Does the trial

---

[17] 545 U.S. 546, 566 (2005).

[18] *Id.* at 558-59. This remains the federal *common law* rule. In 2005, Congress enacted the Class Action Fairness Act, which affords a federal district court subject-matter jurisdiction over a class action lawsuit that alleges, in the aggregate, $5 million in controversy, even though no class member's claim alone would satisfy the $75,000 amount-in-controversy requirement needed to establish diversity jurisdiction in federal court. 18 A.L.R. Fed. 2d 223 (originally published in 2007, continuously updated) (citing 28 U.S.C. § 1332(d)(2)).

court have the requisite subject-matter jurisdiction over the claims of some of the purported class members? As an appellate court adjudicating this interlocutory appeal, we can answer the first question, but we cannot answer the second one.

The first question essentially asks if the trial court has the power to do what it did—in this case, to certify a class action. Challenging a class-action certification determination is a proper issue for interlocutory appeal, so challenging the trial court's initial subject-matter jurisdiction over a claim to make such a determination is also a proper issue for interlocutory appeal.[19] But in this case, Haynes and ATS seemingly admit that one plaintiff in this case satisfies the jurisdictional amount-in-controversy for the trial court to exercise subject-matter jurisdiction over that plaintiff's claim. Once a trial court has the requisite subject-matter jurisdiction over a claim—and all it takes is one claim—the circuit court may proceed to decide upon certification of a class.

The second question stated above, however, is not an appropriate determination for an interlocutory appeal challenging certification of a class. The second question essentially asks whether the trial court improperly asserted subject-matter jurisdiction over *some* of the claims of some of the

---

[19] "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900).

10

plaintiffs in this case. Answering this question would be an inappropriate extension of the issues Kentucky appellate courts can reach on interlocutory appeal. A defendant cannot challenge a trial court's subject-matter jurisdiction over a claim, *in and of itself*, on interlocutory appeal. Opening the door to such a challenge on interlocutory appeal today would encroach upon the very narrow field of issues we have recognized as acceptable to present via interlocutory appeal.

A trial court erroneously assuming subject-matter jurisdiction over a claim in and of itself is not an immediately appealable issue. In the class-action certification context, a trial court needs subject-matter jurisdiction over only one claim to exercise its power and determine whether class certification is appropriate. In this case, the trial court does have subject-matter jurisdiction over at least one of the claims by one of the plaintiffs, as was seemingly conceded by Haynes and ATS, because that plaintiff's asserted amount-in-controversy satisfied the jurisdictional minimum for circuit court jurisdiction.

If Haynes and ATS believe that the trial court erroneously asserted subject-matter jurisdiction over some of the claims in this case, they are free to raise that issue before the trial court and, if unsuccessful at the trial court level, ultimately in the normal appellate process. But, once, as Haynes and ATS essentially concede, the trial court exercises proper subject-matter jurisdiction over one of the claims in this case, the trial court has the power to proceed with its class-action certification determination. This jurisdictional question is the only jurisdictional question appropriate to decide on interlocutory appeal,

11

and because we have answered it in the affirmative, we proceed with our analysis.

### 2. *KRS 337.550(2) does afford class action suits.*

Before we determine whether Hensley may certify as a class, we must first determine whether the procedural vehicle of a class-action lawsuit is even available. Haynes and ATS attempt to argue that this issue is not before us today, and that it would be inappropriate for us to reach this issue.

But simple logic dictates that we must answer this question because determining whether the trial court correctly certified a class necessarily assumes that the case can proceed as a class-action. In other words, determining whether the procedural device of a class action suit is available is a prerequisite to determining whether the case can proceed as a class-action lawsuit. And determining whether the prevailing-wage statute allows the procedural mechanism of a class-action lawsuit is not a determination of the merits of this case in any way. Stated differently, this Court is only determining *if the case can proceed as a class action, not whether anyone is entitled to the relief sought under the prevailing-wage statute.*

We begin our analysis with KRS 337.550(2):

> A laborer, workman, or mechanic may by civil action recover any sum due him or her as the result of the failure of his or her employer to comply with the terms of KRS 337.505 to 337.550. The commissioner may also bring any legal action necessary to collect claims on behalf of any or all laborers, workmen, or mechanics....

Most recently in *McCann v. Sullivan University System, Inc.*, we addressed the availability of class-action lawsuits in which plaintiffs assert claims arising

12

from statutes.[20] As applied to the circumstances of this case, *McCann* stands for the proposition that if "[t]he General Assembly did not create a special statutory proceeding for [an] action[] brought under [KRS 337.550]...CR 23 remains an available procedural mechanism...."[21]

We recognized in *McCann* that "Section 116 of the Kentucky Constitution empowers this Court 'to prescribe...rules of practice and procedure for the Court of Justice.'"[22] One such rule of practice and procedure is Kentucky Rule of Civil Procedure ("CR") 1(2), which states, "[The Kentucky Rules of Civil Procedure] govern procedure and practice in all actions of a civil nature in the Court of Justice except for special statutory proceedings...."

We explained that "[a] 'special statutory proceeding' is one that is 'complete within itself having each procedural detail prescribed.'"[23] "In sum, this Court determines the existence of a special statutory proceeding by evaluating whether the statute in question provides for a comprehensive, wholly self-contained process that prescribes each procedural detail of the cause of action."[24]

---

[20] 528 S.W.3d 331 (Ky. 2017).

[21] *Id.* at 336.

[22] *Id.* at 336.

[23] *Id.* at 334 (quoting *C.C. v. Cabinet for Health and Family Services*, 330 S.W.3d 83, 87 (Ky. 2011)) (quoting *Swift & Co. v. Campbell*, 360 S.W.2d 213, 214 (Ky. 1962))).

[24] *McCann*, 528 S.W.3d at 334 (citing *Shinkle v. Turner*, 496 S.W.3d 418, 420-21 (Ky. 2016); *Western Kentucky Coca-Cola Bottling Co., Inc. v. Runyon*, 410 S.W.3d 113, 116 (Ky. 2013); *C.C.*, 330 S.W.3d at 87; *Swift*, 360 S.W.2d at 214; *Brock v. Saylor*, 189 S.W.2d 688, 689 (Ky. 1945)).

13

Such a "comprehensive, wholly self-contained process" is completely missing from KRS 337.550(2). While it is true that KRS 337.550(2) identifies the "commissioner" as a party allowed to "bring any legal action necessary to collect claims on behalf of any or all laborers, workmen, or mechanics," this is the extent of the process outlined in KRS 337.550(2) for the commissioner's lawsuit. Such a broad and general description of the commissioner's lawsuit falls short of the type of process that would constitute a special statutory proceeding to preclude access to remedies available by class-action lawsuits.

Simply because KRS 337.550(2) allows the commissioner to bring a lawsuit on behalf of claimants does not preclude lawsuits–even class-action suits–by others aggrieved by alleged violations of the prevailing-wage statutes— the two types of actions are not mutually exclusive. KRS 337.550(2) simply gives the commissioner the ability to bring a lawsuit on behalf of claimants. Such a grant by itself cannot be read to suggest an intent by the legislature to foreclose class-action lawsuits in prevailing-wage claims. To the contrary, such grant more likely supports the importance of providing those denied the benefits of the prevailing-wage statutes with alternative forms of redress.

So we hold that KRS 337.550(2) does not preclude the availability of class-action lawsuits because KRS 337.550(2) does not constitute a special statutory proceeding. Therefore, "CR 23 remains an available procedural

14

mechanism applicable to [Hensley's] cause of action brought under KRS 337.[550(2)]."[25]

### 3. *We do not decide today whether Kentucky law imposes a so-called de minimis requirement.*

Before its repeal, Kentucky's prevailing-wage laws provided a robust set of instructions for the payment of prevailing wages similar to federal law's Davis-Bacon Act.[26] These laws were similar, but they were not identical. Haynes and ATS argue that the prohibition in federal law on the payment of prevailing wages to certain workers who spend what these parties term as a "*de minimis* amount of time on the work site*" automatically excludes some of the truck drivers who seek to be a part of the class action in this case.

Determining whether Kentucky law excludes as too trifling for litigation the claims of a group of plaintiffs is not an appropriate consideration for this Court on interlocutory appeal. But Haynes and ATS attempt to conjoin this issue with reviewing the trial court's class-action certification, arguing that determining whether Kentucky prevailing-wage law has a so-called *de minimis* requirement directly affects the *numerosity* requirement.

No doubt *numerosity* would be affected if this Court were to determine whether the *de minimis* limitation applies in Kentucky law. For example, if this Court were to hold that Kentucky law allows a *de minimis* limit on litigable claims, some of the purported class members would be prevented from bringing

---

[25] *McCann*, 528 S.W.3d 336 (Ky. 2017).
[26] 40 U.S.C. § 3141, et seq.

15

suit, requiring a reevaluation of how many purported class members exist and whether joinder of their claims is impracticable.

But we do not reach this issue for the same reason we generally limit the scope of interlocutory appellate review—the interlocutory appeal is a device limited in its scope. And in this case, the interlocutory appeal mechanism cannot be used to address whether Kentucky prevailing-wage law has a *de minimis* limitation that prevents a certain group of plaintiffs from asserting a cause of action. Deciding this issue effectively decides the merits of those plaintiffs' claims.[27]

Determining whether Hensley can proceed with a class-action lawsuit is not a determination about whether certain substantive, on-the-merits arguments, are meritorious; rather, such a determination is whether the suit can *proceed as a class action*. The potential application of the *de minimis* limitation is a proper *consideration* for the trial court in determining whether the class-certification requirements are satisfied.[28] But appellate courts on interlocutory appeal cannot reach and conclusively determine a substantive

---

[27] "As the certification of class actions....is procedural, *such process cannot abridge, enlarge, or modify any substantive right of the parties.*" *See, supra* fn 7. "The right of a litigant to employ the class-action mechanism...is a *procedural right only,* ancillary to the litigation of substantive claims." *See, supra* fn 8.

[28] "Merits questions may be *considered* to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen,* 568 U.S. at 465-66.

issue that reaches the merits of a case when simply reviewing the propriety of the trial court's class-action certification determination.[29]

Our analysis, limited to reviewing the trial court's determination on class certification, is not sufficiently broad to allow us to address potential issues of a law directly affecting the merits of this case. Our holding on this issue is supported by the Fifth Circuit's decision in *Mims v. Stewart Title Guar. Co.*[30] In *Mims*, the Fifth Circuit declined to address whether the plaintiffs' allegations stated a claim under the Real Estate Settlement Procedures Act.[31] In doing so, the *Mims* Court stated, "We may not reach that issue because our review of an appeal under Rule 23(f) is limited and does not permit a general inquiry into the merits of the plaintiffs' claim."[32]

ATS and Haynes here are arguing exactly what the *Mims* plaintiffs argued—that the law does not afford a certain group of plaintiffs a cause of action. And like the *Mims* Court, we decline to address this issue because such a determination is not within the scope of interlocutory review of a trial court's class-certification decision.

---

[29] "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 465-66.

[30] 590 F.3d 298 (5th Cir. 2009).

[31] *Id.* at 302.

[32] *Id.*

17

## B. Class-Action Certification Analysis

### 1. General Rules of Law for Class-Action Certification

A *class action* is "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group."[33] "The class action [is] an invention of equity, mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs."[34]

In Kentucky, a party must fulfill the prerequisites of CR 23.01 and 23.02 to be able to maintain a class action. CR 23.01 states:

> Subject to [CR 23.02], one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

The four requirements in CR 23.01 to maintaining a class action can be summed up as *numerosity, commonality, typicality,* and *adequacy of representation* requirements.[35]

There is no precise size or number of class members that automatically satisfies the *numerosity* requirement.[36] "Whether a number is so large that it

---

[33] Black's Law Dictionary, *Class Action* (10th ed. 2014).

[34] *Montgomery Ward & Co. v. Langer,* 168 F.2d 182, 187 (8th Cir. 1948) (citing *United Mine Workers of America v. Coronado Coal Co.,* 259 U.S. 344, 387-89 (1922)).

[35] *Nebraska Alliance Realty Co. v. Brewer,* 529 S.W.3d 307, 311 (Ky. App. 2017).

[36] Kurt A. Philipps, Jr., et al., 6 Ky. Prac. R. Civ. Proc. Ann. Rule 23.01, Comment 5 (Aug. 2017 updated).

would be impracticable to join all parties depends not upon any magic number or formula, but rather upon the circumstances surrounding the case."[37] "The substantive nature of the claim, the type of the class action, and the relief requested bear on...the necessary showing of numerosity in relation to impracticability of joinder."[38] "Practicability of joinder also depends on the size of the class, the ease of identifying its members and determining their addresses, facility of making service on them, and their geographic dispersion."[39] "Impracticability does not mean impossibility. The class representative need show only that it is extremely difficult or inconvenient to join all members of the class."[40]

The U.S. Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* highlighted the focus of the *commonality* question: Whether the class plaintiffs' claims "depend upon a common contention...that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[41] This Court has also expounded on the *commonality* requirement: "CR 23.01(b) requires that

---

[37] *Id.*

[38] Philipps, *supra* fn 36 (citing *Sowders v. Atkins*, 646 S.W.2d 344 (Ky. 1983)).

[39] Philipps, *supra* fn 36 (citing *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94 (M.D. N.C. 1993)).

[40] Philipps, *supra* fn 36 (citing Wright & Miller, Federal Practice and Procedure (2d ed.), Civil § 1759).

[41] 131 S.Ct. 2541, 2551 (2011).

19

there must be questions of law or fact common to the class, but it does not require that all questions of law or fact be common."[42]

Regarding the *typicality* requirement, "The claims and defenses are considered typical if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and if the claims of the representative are based on the same legal theory."[43] Regarding the *adequacy of representation* requirement, "[a] court will normally look at two criteria: (1) the representative must have common interest with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."[44] "[T]he representative must not have any significant interests antagonistic to or conflicting with those of the unnamed members of the class."[45]

In addition to satisfying the requirements of CR 23.01, a party must satisfy the requirements of CR 23.02 to maintain a class action. CR 23.02 states, "An action may be maintained as a class action if the prerequisites of Rule 23.01 are satisfied, and in addition" one of three requirements is satisfied:

(a) The prosecution of separate actions by or against individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class or (ii) adjudications with respect

---

[42] *Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001).

[43] Philipps, *supra* fn 36, Comment 7.

[44] Philipps, *supra* fn 36, Comment 8 (citing *Runion v. U.S Shelter*, 98 F.R.D. 313 (D.S.C. 1983); *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973)).

[45] Philipps, *supra* fn 36, Comment 8 (citing *Sullivan v. Winn-Dixie Greenville, Inc.*, 62 F.R.D. 370 (D.S.C. 1974)).

20

to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(b) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(c) The court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

Lastly, "[t]wo other requirements not mentioned in the Rule, presumably because they are self-evident, are that a definable class must exist, and the representatives must be members of the class."[46]

### 2. *The trial court did not abuse its discretion when certifying the class.*

A trial court's determination as to class certification is reviewed on appeal for an abuse of discretion.[47] Under an abuse-of-discretion standard, this Court may reverse a trial court's decision only if "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal

---

[46] Philipps, *supra* fn 36, Comment 4 (citing Wright & Miller, Federal Practice and Procedure (2d ed.), Civil § 1759).

[47] *Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983).

21

principles."[48] "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the [trial] court's inherent power to manage and control pending litigation."[49] Importantly, "As long as the [trial] court's reasoning stays within the parameters of [CR] 23's requirements for certification of a class, the [trial court's] decision will not be disturbed."[50]

How thorough the analysis in which the trial court must engage is more difficult to pinpoint. The commentary to Kentucky's Annotated Rules of Civil Procedure discusses the "substantial possibility" test that exists in some jurisdictions.[51] The "substantial possibility" test requires that "a plaintiff must be able to demonstrate there is a substantial possibility that he or she will prevail on the merits before a court will make an affirmative determination of the propriety of the class action."[52] But the United States Supreme Court in *Dukes* recently articulated a less demanding test for evaluating class-action certification than the substantial possibility test.[53]

In *Dukes*, the U.S. Supreme Court held that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to

---

[48] *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

[49] *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998).

[50] *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003).

[51] Phillips, *supra* fn 36, Comment 4.

[52] *Id.*

[53] 131 S.Ct. 2541, 2551 (2011).

prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[54] The *Dukes* Court expounded on this rule, stating, "certification is proper only if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of [Rule 23] have been satisfied."[55] "This 'rigorous analysis' standard will frequently require the trial court 'to probe behind the pleadings before coming to rest on the certification question.'"[56] "As well, this analysis will often entail some review of the merits of the plaintiff's underlying claim."[57]

Although Kentucky has not expressly adopted this standard, this Court "has flirted with accepting this principle, at least to the point of looking beyond the bald allegations in a complaint before certifying a class."[58] We decline to adopt fully the "substantial possibility" test articulated in some jurisdictions. Rather, we will adhere to the guidance the U.S. Supreme Court in *Dukes* has given on this issue. We also acknowledge that our precedent holds that "[i]t is not necessary that there be a complete identification of facts relating to all members of the class as long as there is a common nucleus of operative facts."[59]

---

[54] *Id.* (emphasis in original).

[55] *Id.* (emphasis added).

[56] Philipps, *supra* fn 36, Comment 4 (citing *Dukes*, 131 S.Ct. at 2551).

[57] Philipps, *supra* fn 36, Comment 4 (citing *Dukes*, 131 S.Ct. at 2551).

[58] Philipps, *supra* fn 36, Comment 4 (citing *Sowders v. Atkins*, 646 S.W.2d 344 (Ky. 1983)).

[59] Philipps, *supra* fn 36, Comment 13 (citing *Wiley v. Adkins*, 48 S.W.3d 20 (Ky. 2001)).

At bottom, the only question that is before us is: Was the trial court's decision to certify the class in this case "arbitrary, unreasonable, unfair, or unsupported by sound legal principles?" After due consideration, we cannot say that it was. The trial court did not abuse its discretion when certifying the class.

The Court of Appeals attacked–as the appellees now similarly attack–the trial court's order in several ways. First, they suggest that the trial court failed to conduct a "probe behind the pleadings" or a "rigorous analysis" when conducting its class-certification analysis, and as a result, they have questioned the evidentiary support for class certification. Second, they question compliance with some of the CR 23.01 class- ertification requirements— specifically, *numerosity, commonality,* and *typicality.* Third, they attack the trial court's CR 23.02(c) finding of satisfaction of the predominance and superiority requirements. Lastly, they question the class definition for lack of ascertainability of the class and for other reasons.

### a. *"Probe behind the pleadings," "rigorous analysis," and evidentiary support.*

Although its oral and minimal written findings may not entirely reinforce this conclusion, we are satisfied that the trial court did "probe behind the pleadings" and perform a "rigorous analysis" in this case, and that its findings are supported by the record.

The trial court allowed discovery of additional information beyond what the pleadings stated and conducted extensive hearings that touched both indirectly and directly on the class-certification issue. The trial court also

24

allowed the parties to brief and orally argue the issues, in addition to considering the submission of numerous exhibits.

The trial court's written order and oral findings are admittedly minimal. But a trial court's brevity, in and of itself, does not make its ruling "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." The trial court heard extensive argument and reviewed volumes of testimony and exhibits before deciding.

To say that the trial court's decision lacked sufficient evidentiary support is to ignore the copious amount of discovery and exhibits in this case, which includes 16 volumes of documents comprising the record. Included in these volumes are depositions, interrogatories, document production, and other exhibits that support the trial court's class-certification ruling. Particularly, the record includes lists of truck drivers working for Haynes and ATS during the events in question and provides some indication as to the extent of their involvement in the events at issue in this case.

Additionally, the trial court did not stray beyond the CR 23 framework. Although the trial court's written order contains conclusory statements and minimal explanation for its findings, the trial court made all the required CR 23 findings. All the elements of class certification needed to be satisfied were found to be satisfied. While the trial court's written order itself may not evidence a "probe behind the pleadings" or "rigorous analysis," the record shows that the trial court complied with these requirements.

We are not persuaded that the trial court abused its discretion in the way it considered its findings nor in the way the findings were stated. And while we find no abuse of discretion by the trial court in this instance, we do hasten to emphasize the preference for a class-certification order in which the trial court explains itself beyond conclusory statements with limited written support.

### b. CR 23.01 Findings.

The Court of Appeals' opinion and the appellees heavily predicate their challenge of the trial court's CR 23.01 findings on the satisfaction of the *numerosity* requirement on the number of purported class members. But the *numerosity* question does not involve attempting to find that magic number where a court can proclaim numerosity to be satisfied; rather, the *numerosity* analysis must focus on the *impracticability of joinder.* This is what the rule states: "the class is so numerous *that joinder of all members is impracticable.*"[60]

The size of the class is one consideration for the trial court to make when considering *numerosity,* but it is not the only consideration. "The substantive nature of the claim, the type of the class action, and the relief requested bear on...the necessary showing of numerosity in relation to impracticability of joinder."[61] "Practicability of joinder also depends on the...ease of identifying its members and determining their addresses, facility of making service on them,

---

[60] CR 23.01(a).

[61] Philipps, *supra* fn 36 (citing *Sowders v. Atkins,* 646 S.W.2d 344 (Ky. 1983)).

26

and their geographic dispersion."[62] A trial court's finding on impracticability of joinder is the lynchpin of the numerosity determination.

Haynes, ATS, and Hartford rest their entire argument that *numerosity* has not been satisfied on the size of the class. No attack has been made specifically regarding the trial court's finding "that joinder of all members is impracticable," nor has any suggestion been made to refute the trial court's finding on impracticability of joinder. The size of the class itself is only one consideration for the trial court in determining whether joinder is impracticable. Simple discrepancies as to the number of purported class members does not render a trial court's finding of the satisfaction of the *numerosity* prong an abuse of discretion.

The trial court correctly found *commonality* to be satisfied in this case. *Dukes* identifies the *commonality* analysis lynchpin: Whether the class plaintiffs' claims "depend upon a common contention...that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[63] In this case, the common contention, central to the validity of each claim of each purported class member in this case, is that truck drivers who worked on public-works projects were not paid the prevailing wage and are entitled to that wage.

---

[62] Philipps, *supra* fn 36 (citing *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94 (M.D. N.C. 1993)).

[63] 131 S.Ct. at 2551.

27

Haynes, ATS, and Hartford argue that too many individualized differences among the class members, both factually and legally, exist to satisfy the *commonality* prong. All the factual differences these parties have alleged— mainly, time spent on the site—do nothing to call into question satisfaction of the common contention stated above at this point in the case.

Moreover, the trial court identified two things it would have to do to address these factual differences. First, the trial court stated in the hearing on Hensley's class-certification motion that a determination on the *de minimis* requirement would have to be made before the conclusion of the case. Second, the trial court correctly identified that the parties' concerns were essentially a damages question, and that the trial court could "craft a method to resolve the individual damages determination...." At this point in the case, we cannot find a factual difference between the purported class members and their claims that would destroy satisfaction of the *commonality* requirement.

The parties' argument that differences in each purported class member's liability analysis preclude the satisfaction of *commonality* would be more well taken if they articulated how the analysis differs among class members. Haynes, ATS, and Hartford seem to argue, in one respect, that the legal analysis for finding liability on the payment of prevailing wage is different for each purported class member. But these parties have not shown why this is the case. For example, the parties did not argue that some truck drivers fall

28

under a different statutory analysis than other truck drivers.[64] The parties' simple conclusory allegation that a different legal analysis is needed to evaluate each truck driver's claim is insufficient to prove an abuse of discretion on the part of the trial court in certifying a class.

In general, the record shows the trial court adequately grasped the potential differences among class members and how they may affect this case in further proceedings. We cannot say at this stage of the case that these differences destroy the *commonality* prong.

The trial court also correctly found *typicality* to be satisfied. As stated, the claims of the drivers are all based on the same legal theory—that the law affords truck drivers on public-works projects the right to the prevailing wage. Additionally, the truck drivers' claims "arise from the same event, practice, or course of conduct that gives rise to the claims of other class members"—all purported class members were employed by Haynes, were not paid the prevailing wage, and were truck drivers performing the various activities described in the class definition. We fail to see how any reasonable trial court would not find *typicality* to be satisfied in this case based on those facts.

Nothing about the trial court's CR 23.01 findings can be labeled as an abuse of discretion.

---

[64] This is not to say class certification would be inappropriate in a scenario like that.

29

### c. *CR 23.02 findings.*

As for its CR 23.02 findings, the trial court appears to have found satisfaction of both CR 23.02(a) and (c) without specifying on which factor it predicates its conclusion. Haynes, ATS, and Hartford dispute the trial court's findings as to *predominance* and *superiority*, i.e. CR 23.02(c), essentially making the same argument as they did in disputing *commonality* and *typicality*, in addition to arguing that the case is flatly unmanageable as a class action.

But all the "individualized" determinations that Haynes, ATS, and Hartford argue the trial court would have to make simply boils down to whether a *de minimis* limitation exists in Kentucky law, and if it does not, a difference in the determination of damages. The trial court made clear that it would address the *de minimis* limitation argument later and could fashion a damages calculation to address those questions. Here, the predominant question in this litigation is whether truckers working on public works projects are entitled to the prevailing wage, and the answer to this question determines the merits and demerits of each class member's prevailing wage entitlement.

We also fail to see how a class action in this case would not be "superior to other available methods for the fair and efficient adjudication of the controversy." Allowing this case to proceed as a class action consolidates all claims by former Haynes truck drivers into a single case, which benefits both sides. The truck drivers do not have to bring individualized claims for essentially the same relief, based on a common nucleus of operative facts and

30

on the same legal theory, while Haynes, ATS, and Hartford can organize their defense to contest all claims against them in one litigation.

Even if we were to agree with Haynes, ATS, and Hartford that the CR 23.02(c) requirements cannot be satisfied in this case, the trial court also found satisfaction of the CR 23.02(a) requirements. On the question of whether the CR 23.02 requirements have been satisfied, the trial court need only find the requirements of either (a), (b), or (c) are satisfied to proceed with class certification. Neither the Court of Appeals nor the parties attacked the trial court's findings that the requirements of CR 23.02(a) have been satisfied.[65] As such, no matter our determination of the propriety of the trial court's finding of satisfaction of CR 23.02(c), the trial court found CR 23.02(a) to have been satisfied, which was all that was necessary to proceed with its class certification determination. And this finding has not been challenged.

### d. Class Definition

Lastly, Haynes, ATS, and Hartford attack the class definition itself. We fail to see how this class definition could be characterized as "unworkable," "overbroad," or "unascertainable" as they argue. The class definition identifies exactly who is and is not included in the class and provides the trial court with initial guidance as to how this lawsuit is to proceed.

---

[65] Hartford argues that the trial court mistakenly discussed the requirements of CR 23.02(a) after citing CR 23.02(c) in its order. This mistake, Hartford argues, shows that the trial court applied the wrong legal standard in making its class certification determination. However, we view this discrepancy as merely an indication that the trial court found both CR 23.02(a) and (c) to be satisfied. That being said, the trial court could have been clearer as to what it truly meant.

31

Haynes, ATS, and Hartford use the same, continuous argument that the differences among the members and the *de minimis* limitation call class certification, including the class's definition, into question. But for the same reasons we rejected this contention as it relates to the satisfaction of the *commonality* and *typicality* prongs and CR 23.02(c), we reject this argument again here.

Hartford also alleged that the class definition was an improper "fail-safe" definition, as the Sixth Circuit has articulated.[66] But Hartford misunderstands what a "fail-safe" class is. The Sixth Circuit in *Randleman* found an abuse of discretion in the trial court's initial class definition, which included "[a]ll persons who...*were entitled to receive* [a certain insurance rate]."[67] Defining the class in such way was improper because it "shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."[68]

Essentially, a fail-safe class is one that predicates inclusion of class members on the ultimate finding of liability that the court must make. The class definition in this case is not fail-safe. To be fail-safe, the definition in this case needed to have said something akin to, "All truck drivers who are entitled to the prevailing wage." The trial court's class definition makes no statement as

---

[66] *See Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011).

[67] *Id.* at 350.

[68] *Id.* at 352.

to whether the truck drivers are *entitled* to the prevailing wage, which is the ultimate liability determination it must make. The current class definition only includes those truck drivers "not...paid the prevailing wage." Such a statement affords class membership and the ability to pursue a claim for the prevailing wage to those truckers who were not paid the prevailing wage on the jobsite—it does not say one way or the other whether those who pursue a claim for the prevailing wage are entitled to that wage.

Currently, nothing about the trial court's class definition warrants decertification.

### 3.    *Final Points*

For all the reasons above, we are not convinced by the argument that the trial court's class certification in this case was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Accordingly, we must conclude that the trial court did not abuse its discretion when certifying the class in this case.

We note at this preliminary stage of this litigation, and as this litigation proceeds, that the trial court has several tools at hand to address the concerns of all those involved in this litigation. The trial court can create subclasses within the general class to address the concerns of the defendants in this case,[69] including the allegation that this case really concerns three different and distinct groups of drivers and that the case is "unmanageable." If the

---

[69] CR 23.03(7).

33

current class definition proves to be "unworkable" or "unascertainable," the trial court can modify the class definition.[70] And, nothing prevents the trial court from decertifying the class at any point during the proceedings if the need so arises.[71]

## III. CONCLUSION.

We hold that class-action lawsuits are allowed under KRS 337.550(2). Additionally, we reverse the Court of Appeals and reinstate the trial court's class-certification order.

All sitting. All concur.


COUNSEL FOR APPELLANTS:

William R. Garmer
Jerome Park Prather
Garmer and Prather, PLLC

Brent Caldwell
Caldwell Law Firm, PLLC

Bryce Caldwell
401 Frederica St, Bldg B. Ste 204
Owensboro KY 42301

---

[70] CR 23.03(3).

[71] *In re Prudential Securities Inc. Ltd. Partnerships Litigation,* 158 F.R.D. 301 (S.D. N.Y. 1994).

COUNSEL FOR APPELLEES: HAYNES TRUCKING, LLC; AND L-M ASPHALT PARTNERS, LTD, D/B/A ATS CONSTRUCTION

Robert E. Maclin III
Jon Allen Woodall
Brendan Reynolds Yates
Masten Childers III
McBrayer, McGinnis, Leslie & Kirkland, PLLC

COUNSEL FOR APPELLEE: HARTFORD INSURANCE CO.

La Toi D. Mayo
J. Andrew Inman
Littler Mendelson, P.S.C.

Susan C. Sears

35