RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1171-ME

SOUTH CENTRAL BANK                                          APPELLANT


v.
APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE LARRY ASHLOCK, JUDGE
ACTION NO. 19-CI-01559


JEAN JOHNSON, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: South Central Bank appeals from the Hardin Circuit

Court's certification of a class action. We affirm.

## FACTS

Appellee Jean Johnson ("Johnson") is a former customer of Appellant

South Central Bank ("South Central" or "the bank"). Johnson opened accounts at

South Central in 2017 and 2018.  She filed suit against the bank in late 2019 and closed her accounts shortly after filing suit.

As summarized in the trial court's class certification order, Johnson alleged breach of contract and other claims based on the bank allegedly charging her unauthorized fees on her checking account:

> Johnson alleges she was charged fees in violation of South Central's standardized contract.  She alleges two distinct practices resulted in the unauthorized fees charged to her and by which South Central regularly charged to accountholders during the period at issue.
>
> Johnson contends South Central has improperly garnered millions of dollars in fees from thousands of South Central accountholders through its automated practice of assessing (1) overdraft fees on debit card transactions that were authorized on sufficient funds but settled into a negative balance ("APSN Fees"); and (2) more than one insufficient funds fee ("NSF fee") or overdraft fee on an item rejected and returned for insufficient funds ("Multiple Fees").  Johnson asserts that these practices breach South Central's uniform adhesion contract with its accountholders (Counts I and II), and violate the Kentucky Consumer Protection Act, KRS[1] §§ 367.110-367.300 (Count III).  South Central brings several challenges to certification.

South Central employed an automated core processor to automatically process transactions, including assessing fees on transactions.  The trial court described how debit card transactions were processed:

---

[1] Kentucky Revised Statutes.

-2-

South Central's automated core processor uniformly processes debit card transactions in two parts. First, at the time the member "swipes" her debit card, authorization for the purchase amount is instantaneously obtained by the merchant from South Central. At this point, South Central chooses to either pay or decline the transaction. To determine if a debit card transaction should be authorized, South Central looks to the available funds in the customer's account. Once South Central has authorized a transaction, it is obligated to pay the merchant. Thus, sometime after South Central has authorized the transaction, it transfers the funds from the customer's account to the merchant.

(Citations to trial to record omitted.)

Johnson's complaint alleged that two types of fees – APSN fees and multiple returned item ("RI") fees – were improper. According to Johnson, South Central "engaged in an automated 'Authorize Positive, Settle Negative' 'APSN' practice of assessing an overdraft fee on debit card transactions that posted when the account contained insufficient funds, even though sufficient funds were in the account at authorization and South Central contemporaneously set aside funds to cover the transaction." She also asserted that South Central uniformly assessed NSF[2] or overdraft fees "whenever a transaction (ACH[3] or check) was attempted but there were insufficient funds to cover it, including assessing these fees on the

---

[2] Insufficient Funds Fee.

[3] Automated Clearing House, a network which handles electronic payments and automated money transfers.

re-processing of a transaction that South Central had previously rejected (and previously charged a fee)."

Johnson asserted claims in her complaint for breach of contract and the breach of covenant of good faith and fair dealing, unjust enrichment, and violation of the Kentucky Consumer Protection Act ("KCPA"). She demanded a jury trial and requested that the trial court certify a class under CR[4] 23. She also requested other relief including injunctive or declaratory relief, restitution of money, statutory and actual damages, interest, reimbursement of attorneys' fees and other litigation expenses, and other relief deemed proper by the trial court.

South Central challenged the request for class certification among other matters and the parties engaged in some discovery, including taking depositions. The parties reached an agreement about certain discovery to be produced before the trial court ruled on class certification. "Specifically, South Central agreed to produce a one-month sample of transactional data regarding APSN charges and multiple RI [returned item] fee charges as well as account agreement forms, fee schedules, disclosures, overdraft and non-sufficient funds policies, procedures, and practices for checking accounts."

Johnson filed a motion for class certification and affidavits from her expert, Arthur Olsen ("Olsen"). In Olsen's original affidavit, he stated he received

---

[4] Kentucky Rules of Civil Procedure.

-4-

deposition transcripts from five South Central corporative representatives and data from South Central. Based on his review of these materials and experience analyzing customer transaction data from other financial institutions, Olsen opined he would be able to identify class members and calculate damages once provided with "full transactional data" from South Central.

After additional briefing and a hearing, and pursuant to the trial court's order following oral argument, Johnson filed a supplemental affidavit from Olsen. In this supplemental affidavit, Olsen described making preliminary calculations about the number of class members and amount of fees based on review of a one-month sample of South Central's customer transaction data. He stated 237 accountholders were assessed APSN fees totaling $10,890 and 190 accountholders were assessed multiple RI fees totaling $11,610 for the month reviewed. Olsen's supplemental affidavit also stated he could perform additional analysis to give the bank credit for reversed or refunded fees and for uncollectables (when an account was closed due to a negative balance) if provided with data about such reversals, refunds, and uncollectables.

Ultimately, the trial court entered an order certifying two classes: 1) an Overdraft Fee Class consisting of: "All citizens of Kentucky who were South Central Bank checking account holders between October 4, 2009 and October 8, 2018 and who were charged overdraft fees on debit card transactions authorized on

sufficient funds" and 2) a Multiple NSF Fee Class consisting of: "All citizens of Kentucky who were South Central Bank checking account holders on or after October 4, 2009 and who were charged more than one fee on an item."[5] South Central Bank filed a timely appeal from the class certification order.

## ANALYSIS

## Standard of Review

Appellate courts review trial court decisions on class certifications for abuse of discretion – meaning we reverse only if the decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 444 (Ky. 2018). This deferential standard of review reflects both the fact-specific nature of certification inquiries and the trial court's "inherent power to manage and control pending litigation." *Id*. Therefore, if the trial court's reasoning for its class certification decision remains within the "parameters" of CR 23 class certification requirements, the class certification decision should not be disturbed. *Id*.

## CR 23.01 and CR 23.02 Requirements for Maintaining a Class Action

To maintain a class action, the requirements of both CR 23.01 and CR 23.02 must be fulfilled. *Hensley*, 549 S.W.3d at 442. CR 23.01 sets forth four

---

[5] The trial court excluded from the two classes: "(1) Defendant [South Central Bank], Defendants' [sic] subsidiaries and any entity in which Defendant has a controlling interest; and, (2) the Judge assigned to this case and any member of his or her immediate family[.]"

mandatory requirements for a class action, often summarized as numerosity, commonality, typicality, and adequacy of representation. *Id*. at 442-43. In addition to fulfilling all four CR 23.01 requirements, a viable class action must satisfy at least one of three factors set forth in CR 23.02. *Id*. at 444.

**Preliminary Considerations – Application of Federal Precedent and Burden of Proof for Class Certification**

As CR 23 closely resembles FRCP[6] 23, precedent from federal courts about class actions may be applied to Kentucky cases involving determinations of whether a class can be certified. *See Hensley*, 549 S.W.3d at 436 ("[B]oth sides agree that federal law should guide this Court's analysis of the trial court's class-certification decision because CR 23 mirrors its federal counterpart, Federal Rules of Civil Procedure Rule (FRCP) 23.").

The party seeking class certification bears the burden of showing that all CR 23 prerequisites for maintaining a class action are fulfilled. *Nebraska All. Realty Company v. Brewer*, 529 S.W.3d 307, 316 (Ky. App. 2017). The trial court must conduct a "rigorous" analysis before determining whether to certify a class and the party seeking class certification must demonstrate that CR 23 prerequisites are fulfilled, such as there being numerous parties and common questions of law and fact – which necessarily involves some "overlap" with the merits of claims.

---

[6] Federal Rules of Civil Procedure.

*Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-52, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)).

South Central argues that the trial court failed to engage in the required rigorous analysis, that it abused its discretion in determining that CR 23 requirements were met and, in deciding to certify the class, and that its class definitions are overly broad. Before addressing its arguments about whether the trial court engaged in sufficiently rigorous analysis or the class definitions were overly broad, we first address the parties' arguments about specific CR 23.01 and CR 23.02 requirements.

**No Reversible Error in Finding Four CR 23.01 Requirements Fulfilled**

CR 23.01 states:

> Subject to the provisions of Rule 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

**1) Numerosity**

South Central does not appear to dispute that the numerosity requirement of CR 23.01 is met. It does not explicitly argue the numerosity requirement was not fulfilled in its appellate brief, nor did it argue lack of

numerosity to the trial court based on our review of the record. In short, the numerosity requirement of CR 23.01(a) is indisputably fulfilled.

### 2) Commonality

CR 23.01(b) requires that: "there are questions of law or fact common to the class[.]" The trial court found there were common questions of law or fact among the proposed class.

The trial court noted Johnson's assertions that the challenged fees breached South Central's standard contracts with its account holders and violated the Kentucky Consumer Protection Act. It also stated:

> South Central's uniform contract and standardized fee assessment practices, including the automatic processing of transactions and assessments of fee through its "core processor," have been commonly applied to Johnson and class members, therefore, this case is amenable to class treatment.

The trial court then went on to describe how South Central used a core processor to automatically process transactions, including assessing fees in the factual background section of its class certification order.

And in analyzing the commonality component of CR 23.01, the trial court found "the central questions in this case are common to Johnson and members of the Classes" after noting "[o]ne significant issue common to the class may be sufficient to warrant certification[.]" (quoting *Manning v. Liberty Tire Services of Ohio, LLC*, 577 S.W.3d 102, 113 (Ky. App. 2019)). Given South

Central's use of form adhesions contracts and its automated, uniformly applied processes for assessing fees, the trial court stated: "Not only are South Central's fee assessment practices and standardized contract language uniform as to Johnson and class members, Johnson's claims will turn on common answers to these common questions."

South Central argues that the trial court erred in finding the CR 23.01 requirement for commonality fulfilled. It quotes precedent from this Court defining commonality under CR 23.01 as follows:

> Commonality is the requirement that questions of law or fact are common among the class members. The class members must "have suffered the same injury[,]" and the claims must depend on a common contention capable of class-wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Brewer*, 529 S.W.3d at 312 (quoting *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551).

In response, Johnson quotes precedent from our Supreme Court stating that the commonality requirement "does not require that all questions of law or fact be common" and that "complete identity of facts relating to all members" is not necessary "as long as there is a common nucleus of operative facts." *See Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001).

The parties also note that the commonality requirement also entails class members be able to use the same proof to prove their claims, so there is no

need for a separate trial for each class member. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397-98 (6th Cir. 1998) (stating: "What we are looking for is a common issue the resolution of which will advance the litigation" and recognizing commonality entails proof on a class-wide rather than individualized basis). But Johnson emphasizes that even *Sprague* holds that "there need only be one question common to the class." *See id*. at 397.

Having carefully reviewed the record and the applicable law, we discern no abuse of discretion or other error in the trial court's determination that the CR 23.01 commonality requirement was fulfilled. Evidence in the record supports the trial court's finding that the same standard contracts applied to account holders at relevant times and that South Central's core processor automatically processed transactions and assessed fees in a uniform manner. Further, Johnson came forward with proof from her expert (including a supplemental affidavit after the trial court evidently found the initial affidavit insufficient) that he could ascertain class members and determine damages (based on the amount of fees paid) from data supplied by South Central. In short, the trial court's finding the CR 23.01(b) commonality requirement fulfilled was not in error.[7]

---

[7] We are aware the parties both discussed the CR 23.01(b) commonality requirement together with the predominance requirement of CR 23.02(c) in their briefs, but we elect to discuss all CR

## 3) Typicality

CR 23.01(c) requires that: "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]"

The trial court concluded the typicality requirement of CR 23.01(c) was fulfilled because Johnson was, at least at one time, charged the same types of fees as other class members through the same fee assessment practices. It noted South Central's arguments about changes made to its form contracts effective August 1, 2019. But the trial court perceived that the same questions about whether the fees were permitted before or after August 1, 2019 applied to Johnson as to other class members. It found the typicality requirement met, viewing typicality as not a difficult standard to meet.

According to our Supreme Court, a proposed class representative's "claims and defenses are considered typical if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and if the claims of the representative are based on the same legal theory." *Hensley*, 549 S.W.3d at 443.

---

23.01 requirements before considering whether CR 23.02 requirements are met. The predominance element will be discussed later in this Opinion.

As the trial court noted, Johnson's claims stemmed from the same course of conduct as other proposed class members – the bank's automatically assessing the challenged fees via its core processor. And Johnson's claims would be based on the same legal theories as other class members – *i.e.*, breach of contract and/or breach of the covenant of fair dealing or alternatively unjust enrichment, and violation of the Kentucky Consumer Protection Act. This was enough to satisfy typicality according to *Hensley*.[8]

Similar to *Hensley*'s definition of typicality, this Court has described typicality as simply there being a sufficient nexus between the individual class representative's claims and those of the class in general. *Brewer*, 529 S.W.3d at 312. We discern no error in the trial court's typicality finding under this definition either.

Furthermore, federal authority indicates typicality results in the class representative's interests aligning with those of other class members. *Sprague*, 133 F.3d at 399. Despite Johnson's no longer having accounts at South Central, the

---

[8] In discussing typicality, the trial court quoted another portion of *Hensley*, 459 S.W.3d at 445, which perhaps addresses commonality rather than typicality: "[i]t is not necessary that there be a complete identification of facts relating to all members of the class as long as there is a common nucleus of operative facts.") (internal quotation marks omitted). Nonetheless, questions of commonality and typicality are closely intertwined, and we discern no error in the trial court's finding of typicality. And to the extent that the trial court's reasoning differs from our own, we affirm on independent grounds supported by the record and applicable law. *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

evidence supports a finding that her interests generally aligned with other current or former account holders who might wish to recoup the challenged fees or change the bank's policies going forward.

In addition to typicality requiring alignment of interests, other federal authority states: "To meet the typicality requirement, the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims." *Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990). Logically, this would be true here – Johnson proving there was a breach of contract and breach of covenant of fair dealing as well as violation of Kentucky Consumer Protection Act in the bank charging her these fees would also establish the bulk of these same claims of other bank customers under the same form contracts for being charged these same types of fees. In other words, it would take the same sort of proof to prove her claims as to prove the claims of other class members. *See Sprague*, 133 F.3d at 399.

South Central suggests Johnson's unjust enrichment claims require determination of individual circumstances so her unjust enrichment claims are not typical of others. But unjust enrichment was asserted as an alternative claim to breach of contract or breach of covenant of fair dealing in the complaint. Possibly, class members might recover for breach of contract without the court ever considering unjust enrichment to resolve the case. And even though unjust

enrichment claims might typically not be as amenable to class actions due to reliance requirements,[9] such unjust enrichment claims in this context – for challenged bank fees – may be more amenable to class action certification due to the defendant's common course of conduct in automatically assessing such fees.

For example, federal precedent has rejected similar contentions of lack of typicality for bank overdraft fees despite plaintiffs asserting alternative claims of unjust enrichment where the defendant's uniform conduct makes the class representative's efforts to recoup challenged fees typical of other class members. *See In re Checking Account Overdraft Litigation*, 307 F.R.D. 630, 643 (S.D. Fla. 2015) (noting plaintiff's argument that: "The evidence regarding Wells Fargo's scheme, including its uniform misrepresentations and concealment of its overdraft practices, renders Plaintiffs' unjust enrichment and unconscionability claims typical of the class claims."). *See also id*. at 647 ("Unjust enrichment claims can be certified for class treatment where common circumstances bear upon whether the defendant's retention of a benefit from class members was unjust."). *See also in re Checking Account Overdraft Litigation*, 286 F.R.D. 645, 653-54 (S.D. Fla. 2012) (citation omitted) ("[I]t is the defendant's common course of

---

[9] *See generally Johnson v. BLC Lexington, SNF, LLC*, No. CV 5:19-064-DCR, 2020 WL 3578342, at *8 (E.D. Ky. Jul. 1, 2020) (unpublished); *Carter v. Paschall Truck Lines, Inc.*, No. 5:18-CV-41-BJB, 2023 WL 359559, at *16 (W.D. Ky. Jan. 23, 2023) (unpublished) – both cited in the Appellant brief at page 16. Such unpublished cases are not binding on us. *See* Kentucky Rules of Appellate Procedure ("RAP") 41.

conduct . . . which governs considerations of typicality. Plaintiffs and the members of the class are all challenging the same overdraft policies of [bank] and seeking to recover the additional overdraft fees they incurred as a result of [bank's] re-sequencing of their transactions. This is true irrespective of the cause of action alleged."). In short, especially given evidence that the challenged fees were automatically assessed by South Central's core processor, there was no error in the trial court's finding of typicality.

### 4) **Adequacy of Representation**

CR 23.01(d) requires that: "the representative parties will fairly and adequately protect the interests of the class."

The trial court found that Johnson as class representative would fairly and adequately protect other class members' interests as "her interests are evidently common with members of the classes" and as she retained experienced class counsel. South Central does not appear to dispute that proposed class counsel is capable of adequately representing the interests of class members. But it challenges the trial court's finding that Johnson would fairly and adequately protect class members' interests.

For instance, South Central argues Johnson lacks standing and/or incentive for seeking injunctive relief and is therefore an inadequate class

representative. It cites, *inter alia*,[10] an unpublished federal case from the Eastern District of Arkansas in which class certification was denied partly due to concerns with the adequacy of representation based on the proposition that a former bank customer would lack standing to seek injunctive relief. *See Wilkins v. Bank*, No. 3:20-CV-116-DPM, 2023 WL 1868142, at *7 (E.D. Ark. Feb. 9, 2023) (unpublished) ("Watson is not a current Simmons [bank] customer, so he does not have standing to seek injunctive relief."). The federal district court also found that even if Watson had standing, he lacked incentive to seek injunctive relief.

But the former bank customer (Watson) in *Wilkins* expressly denied in his deposition testimony any interest in reforming the bank's current practices or in protecting current account holders. *Id*. South Central points to no evidence of Johnson expressly disclaiming any similar interest in reforming the bank's current policies or protecting current account holders. Johnson asserts she has an interest in seeing that others are not harmed by the fee practices as she was. We also note that according to Kentucky's Rules of Appellate Procedure: "Unpublished

---

[10] South Central also cites opinions from Kentucky appellate courts purportedly holding that a former customer lacks standing to seek injunctive relief. It cites an unpublished opinion from our court, but such unpublished opinions from Kentucky appellate courts are not binding, RAP 41(A), and we decline to discuss that unpublished case. It also cites a published case about a former shareholder lacking standing to prosecute an appeal of a shareholder's derivative lawsuit. *See Bacigalupo v. Kohlhepp*, 240 S.W.3d 155, 157 (Ky. App. 2007). However, *Bacigalupo* is of limited relevance here due to its different context (shareholder's derivative suits with their "continuous ownership" rules for maintaining standing) and its lack of any class action certification questions.

-17-

opinions from other jurisdictions are not binding precedent and citation of these opinions is disfavored." RAP 41(B). So, *Wilkins* is not binding upon us.

Furthermore, in addition to the lack of disavowal of interest in future fee practices in this case, we have some concerns with *Wilkins*' reasoning. For example, when stating a former bank customer lacked standing to seek injunctive relief, the *Wilkins* court did not cite to another case challenging bank fees. Instead, it cited a case involving a former pit bull owner's challenge to an ordinance banning the owning or possession of pit bulls in a city in which the former pit bull owner no longer lived. *See Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1161 (8th Cir. 2019), cited in *Wilkins*, 2023 WL 1868142, at *7. In addition to this distinguishable fact situation, *Frost* does not mention any attempt to seek certification as a class action. So, *Frost* does not address how an individual plaintiff's lack of standing to seek declaratory or injunctive relief affected the adequacy of a class representative's representation.

Furthermore, as Johnson points out, South Central does not argue she lacks standing to seek money damages. Given that she has standing to seek at least some of the relief sought in the complaint, even if she does lacks standing to seek injunctive relief, Johnson argues the trial court could still properly certify a class. As support, she cites *Imhoff v. House*, 628 S.W.3d 88, 92 (Ky. 2021) (stating trial court has subject matter jurisdiction over case to properly rule on class certification

if it has subject matter jurisdiction over one claim). *See also Hensley*, 549 S.W.3d at 439 ("Once a trial court has the requisite subject-matter jurisdiction over a claim – and all it takes is one claim – the circuit court may proceed to decide upon certification of a class.").

Of course, the trial court's having subject matter jurisdiction over a case is not necessarily the same thing as a party having standing to seek a particular type of relief. *See Mason v. Stikes*, 650 S.W.3d 292, 298 (Ky. App. 2022) ("[S]tanding and lack of subject-matter jurisdiction are not synonymous. The key difference is that subject-matter jurisdiction involves a court's ability to hear a type of case while standing involves a party's ability to bring a specific case.").

Even if Johnson lacks standing to seek injunctive relief herself, she clearly has standing to seek money damages and/or recoup improperly assessed fees so she could at least adequately represent the class in that regard. It is easily foreseeable that the class certification order may eventually be amended to reflect the issues certified concern only entitlement to money damages and/or recoupment of assessed fees and not entitlement to injunctive relief, in the absence of a current South Central bank customer class representative. Therefore, we cannot say that the trial court abused its discretion in certifying the class despite South Central's

arguments that its former customer Johnson lacked standing to seek injunctive relief and was therefore an inadequate class representative.

As Johnson asserts, the adequacy of representation requirement is primarily concerned with conflicts of interest between named class representatives and the class they seek to represent. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997) (Adequacy of representation requirement of federal equivalent to CR 23.01(d) "serves to uncover conflicts of interest between named parties and the class they seek to represent."). Like the typicality requirement, the focus of the adequacy of representation requirement is whether the class representative's interests align with those of other class members. *Id.* at 626, 117 S. Ct. at 2251. *See also Hensley*, 549 S.W.3d at 443 (adequacy of representation satisfied if class representative has "common interests" and no "antagonistic" or conflicting interests with other class members, and it appears class representative will vigorously pursue class action).

Even if Johnson, as a former bank customer, might not directly benefit from injunctive relief to the same extent as South Central's current customers, there is no indication that her interests conflict with that of current bank customers. Instead, the evidence of record shows that her interests generally align with that of current bank customers as noted by the trial court.

-20-

In addition to its argument that Johnson is an inadequate class representative since she is not a current South Central customer, South Central argues she cannot adequately represent the class due to timing concerns. It asserts that Johnson was not assessed multiple fees on any one item until August 2019, when the modified account agreement took effect and permitted such multiple fees (at least in its view).

South Central also argues Johnson is not even a class member of the multiple fee class because of the new account agreement allegedly permitting such multiple fees. But while the August 2019 amendments to the form contract might affect whether Johnson could recover on a breach of contract claim, perhaps she might still recover if this fee is held to be a KCPA violation. And in any event, she could still be a member of the class (people charged multiple RI fees during that time frame) regardless of whether she is entitled to recovery for multiple RI fees during the relevant time frame.

South Central misses the mark in suggesting that Johnson could not be an adequate representative due to concerns she might not be able to prevail on certain claims. The trial court was not faced with determining whether Johnson could prevail on any claim on the merits in ruling on class certification, but whether there were common questions capable of being resolved together with the same sort of evidence. As our Supreme Court aptly noted, "A suit may be a proper

class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." *Hensley*, 549 S.W.3d at 437.

In short, we discern no error in the trial court's finding of adequacy of representation to satisfy CR 23.01(d). Having discerned no error in the trial court's finding of CR 23.01 prerequisites, we next assess whether the trial court erred in determining that the requirements of CR 23.02(c) were fulfilled.

**No Reversible Error in Finding CR 23.02(c) Requirements Fulfilled**

CR 23.02 states: "An action may be maintained as a class action if the prerequisites of Rule 23.01 are satisfied, and in addition" one of three alternative grounds is met. The trial court found CR 23.02(c) requirements met, and neither party argued that the alternative requirements stated in CR 23.02(a)-(b) apply.

CR 23.02(c) requires that, in addition to finding CR 23.01 prerequisites met:

> (c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular

forum; (iv) the difficulties likely to be encountered in the management of a class action.

The trial court found that common issues predominated over issues pertaining only to certain individual members and that a class action would be superior to other methods for adjudicating the controversy. We first address the predomination requirement of CR 23.02(c).

### 1) Predominance (Common Issues Predominate Over Individual Issues)

To satisfy CR 23.02(c), common issues of fact or law must predominate over issues affecting only individual class members.

The trial court found that common questions about whether automated and uniform fee assessment practices violated its standard form questions predominated despite South Central's assertion of various individualized issues. It found that the deposition testimony of South Central representatives "reflects the uniform and automated manner that South Central assesses the challenged fees through its core processor" and that "any changes made by South Central to its uniform, adhesion contract were made uniformly as to the Classes and therefore, can be addressed through generalized proof[.]" It also found that Johnson and her expert, Olsen, "demonstrated that damages can be determined through South Central's transaction data, including data on reversals and refunds." And it concluded that any statutes of limitation defenses would not defeat certification.

-23-

We discern no reversible error in the trial court's predominance analysis. Substantial evidence in the record supports the trial court's findings about the uniform and automated nature of the assessment of the challenged fees and about the similarly uniform nature of changes to the bank's form contracts. And although statutes of limitations arguments may pose some interesting questions – especially as the different claims asserted have different statutes of limitations, federal precedent suggests that the possibility of individual statute of limitation defenses does not preclude a finding that common issues predominate over individual issues. *See, e.g.*, *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("[T]he mere fact that such [statute of limitations] concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones."). *See also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 327 (4th Cir. 2006) (affirming denial of class certification under specific facts of case because individualized statute of limitations issues predominated over common issues but noting "we can easily foresee a situation where the defendant's statute of limitations defense is so dependant [sic] upon facts applicable to the entire class . . . that individual hearings would not be necessary.").

Sometimes common issues of statute of limitations defenses may predominate over more individual issues. And often a court has options for

dealing with statute of limitation issues in an efficient manner through class action

litigation, as discussed in secondary authority:

> Statute of limitations defenses – like damage calculations, affirmative defenses, and counterclaims – rarely defeat class certification.  In many circumstances, statutes of limitations defenses run against most or all class members.  For example, the question of whether a prior class action suit tolled the statute of limitations will be common to many or all class members, as will the question of whether alleged fraudulent concealment by the defendant should affect the limitations period. **When a limitations defense is common across the class, it will contribute to – not undermine – a finding that common issues predominate**.

> Statute of limitations defenses are often also marginalized by the fact that class counsel typically will define the proposed class as those with live claims (*e.g.* buyers of a specific product within a specified time period); such definitions will preempt the assertion of a statute of limitations defense.  Finally, **if statute of limitations issues are somewhat individualized, courts deem that these concerns can be resolved during the damage phase of the case and need not preclude certification of liability issues**.

> For these reasons, **most courts reject the contention that statute of limitations defenses, on their face, preclude a finding of predominance and instead demand evidence that such defenses will in fact cause the litigation to devolve into multiple individualized hearings**.  Individualizing evidence can arise, but it is more the exception than the norm.

> The First Circuit summarized the state of the law as follows:

Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any *per se* rule that treats the presence of such issues as an automatic disqualifier.  In other words, the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.  As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under [Federal] Rule 23(b)(3) . . . .[11]

This passage reflects the law in most circuits.

WILLIAM B. RUBENSTEIN, 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:57 (6th ed. Nov. 2023 update).  *See also* J. Douglas Richards & Benjamin D. Brown, *Predominance of Common Questions – Common Mistakes in Applying the Class Action Standard*, 41 RUTGERS L.J. 163, 182-84 (2009) (concluding some courts mistakenly deny class certification based solely on the presence of statute of limitations defenses and overlook other tools for resolving statute of limitations issues in an efficient manner in class actions cases, calling for careful weighing of individual and common issues in predominance analysis, and noting that a

---

[11] *Mowbray*, 208 F.3d at 296.  FRCP 23(b)(3) is the equivalent of CR 23.02(c).

predominance of common issues does not mean that a case involves exclusively common issues).

At the present juncture, there is no reversible error in the trial court finding that common issues predominate over individual issues – despite the possibility of statute of limitation defenses applying to some class members' claims but not others.[12]  Next, we address the superiority prong of CR 23.02(c).

## 2) Superiority (Class Action Best Way to Resolve Dispute)

To satisfy the superiority requirement of CR 23.02(c), one must show "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

South Central asserts that the trial court erred in finding a class action to be a superior way to adjudicate the controversy.  It asserts that an administrative proceeding would instead be superior for resolving these disputes.  But South Central does not identify the type of administrative proceeding to which it refers. And as the trial court noted, numerous cases from other jurisdictions have

---

[12] Some statutes of limitations issues may be common to many class members and might be addressed in an efficient manner through motions for summary judgment or dismissal of certain claims for fees assessed before a certain point.  Possibly the class certification order may be altered or amended under CR 23.03(3), or the classes divided into subclasses under CR 23.03(7) to reflect assessment of fees prior to and after certain dates.  Or possibly individual statute of limitations problems may be resolved at the damages stage despite the certification of liability issues.  *See generally* 2 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 4:57.

concluded that similar litigation about bank overdraft fees is best resolved by class action.

The trial court also stated that "mass consumer" cases involving small amounts of individual damages with "little means to pursue expensive, complex litigation" are best pursued as class actions to protect the rights of people who might otherwise be unable to assert their rights in court at all (citing *Windsor*, 521 U.S. at 617, 117 S. Ct. at 2246).

South Central disagrees, suggesting in its brief there are too many separate issues here to resolve in a single class action:

> Analyzing hundreds of thousands of transactions to determine which agreements governed, whether overdraft fees were appropriate under the agreements, whether the accountholder was a business or an individual, what the accountholder knew about their balance at the time of certain transactions, what fees were charged, whether fees were reversed or refunded, and whether the claims fall within the applicable statute of limitations for four different causes of action is an insurmountable task. The sheer enormity of this task mandates reversal of the class certification.

(South Central makes a nearly identical argument to suggest that individual issues predominate over common issues in its reply brief.)

Certainly, we do not deny that there may be difficulties in resolving the merits of all class members' claims in the same proceeding. Nor do we deny that individuals may have different preferences regarding how they would like to

resolve the fee disputes here or that the merits of individual claims may differ. Yet while such difficulties or differences may be considered in determining whether a class action is superior for resolving a certain dispute, *see* CR 23.02 (c), they do not necessarily show that class action adjudication is not superior or that certification should be denied.

For example, a well-known treatise construing the federal equivalent of CR 23.02(c) – which identifies the same factors for consideration of whether a class action would be superior for resolving the dispute – states:

> The rule does not indicate the weight to be given to each factor or require that the action be dismissed if particular conclusions are reached as to any or all of them. Clearly, no single element is determinative. The enumeration simply provides some guidance to assist a judge in deciding whether a class action best serves the interests of the litigants and the court.

MARY KAY KANE, 7AA FED. PRAC. & PROC. CIV. § 1780 (3d ed. Apr. 2023 update).

As we discuss later in this Opinion, perhaps South Central may request alteration or amendment to the class certification order or pursue motions for dismissal or summary judgment on certain claims in the future. However, we view Johnson's arguments that class action would be a superior way to resolve the fee disputes here as much more compelling than South Central's arguments to the

contrary. And we quote with approval the following portion of the appellee brief regarding the superiority of a class action for resolving this type of dispute:

> this is a straightforward case where Appellee's [Johnson's] and class members' claims uniformly turn on South Central's standardized fees charged under a form adhesion contract – as shown by the class-wide evidence, including unrebutted expert testimony that the relevant overcharges can be systematically identified from South Central's own data. This is precisely the type of case suited for class certification, and the trial court did not abuse its discretion.
>
> To the extent that there are any (if any at all) individual issues, they are negligible and do not defeat manageability. Indeed, if a class action cannot be certified in a case where a bank has charged thousands of customers the same fees under the same contracts using the same automated processes, it is hard to imagine how *any* case could be a class action. How else could the class members redress their claims? Bringing thousands of individual claims for paltry damages is unworkable and precisely why courts recognize classes as superior forms of adjudication. This is a far cry from the management issues in *Sowders v. Atkins*, 643 S.W.2d 344, 346-47 (Ky. 1983), where the plaintiff brought civil rights claims against county-judges and jailers in 78 counties, or where individuals were charged different fees for different reasons in *Lamar v. Office of Sheriff of Daviess County*, 669 S.W.3d 27, 29 (Ky. Ct. App. 1984). Rather, the circumstances here present the textbook case of why class actions exist – so that parties and courts can efficiently resolve disputes about a systemic, uniform practice that has affected many people.

In short, we discern no error in the trial court's finding that a class action would be a superior method of resolving the fee disputes based on the

record and applicable law. Having discerned no reversible error in the trial court's findings regarding individual CR 23.01 and CR 23.02 requirements, we next address whether the trial court conducted sufficiently rigorous analysis of CR 23.01 and CR 23.02 requirements.

**Trial Court Conducted Rigorous Analysis of CR 23 Requirements**

South Central's brief claims the trial court erred by "failing to conduct a rigorous analysis of Johnson's claims." But the key question is whether the trial court conducted a rigorous analysis of CR 23 requirements, not whether it conducted a rigorous analysis of the merits of Johnson's or others' claims. *Hensley*, 549 S.W.3d at 437 (at class certification stage, trial court may consider merits questions about claims only to the extent that they reflect on whether CR 23 requirements are met).

Having carefully examined the trial court's findings of all necessary CR 23.01 and CR 23.02 requirements, we reject any contention that the trial court failed to rigorously analyze whether certification requirements were met. We further reject South Central's argument that the trial court improperly took all allegations in the complaint as true without properly considering whether evidence showed CR 23 requirements were met.

South Central contends that the trial court erroneously concluded that the bank's "uniform contract and standardized fee assessment practices, including

the automatic processing of transactions and assessment of fees through its 'core processor'" were commonly applied to Johnson and class members. It argues that if the trial court had examined Johnson's account agreement, it would have found that this agreement permitted some of the challenged fees (such as multiple fees on the same returned items) so her claims were not typical, and she could not fairly and adequately represent the class.

Johnson contends that this would be determining the merits of a breach of contract claim, which is not called for at the class certification stage, but which perhaps might be appropriately resolved through a summary judgment motion. She asserts that despite not resolving the merits of breach of contract claims, the trial court examined the terms of account agreements and appropriately determined such account agreements were uniform among account holders. She also suggests that South Central's merit-based argument shows why the case is appropriate for class action resolution – since claims could be resolved in "one stroke" when the trial court properly determines whether uniform contracts were breached by the fee assessment practices. *See Hensley*, 549 S.W.3d at 443.

So, Johnson contends the court engaged in the rigorous analysis of CR 23 requirements by, *inter alia*, examining the terms of the account agreement and determining they were uniform among account holders at relevant times. We also recognize the trial court did not simply take all allegations of the complaint as true

for purposes of determining if CR 23 requirements were met. Instead, the trial court allowed the parties to brief certification issues at length, heard oral argument regarding class certification issues, and even called for the filing of a supplemental affidavit of the plaintiff's expert before resolving the class certification issue.

While the class certification order entered by the trial court bears some substantial similarities to the proposed class certification order submitted by Johnson,[13] the class certification order identifies evidence in the record relevant to CR 23 requirements. It also applies relevant state and federal case precedent in determining that CR 23 requirements are met and deciding that class certification is appropriate. And though its discussion of some CR 23 requirements in the class certification order may be somewhat brief or conclusory, it discussed each relevant requirement and its findings on CR 23 requirements are supported by substantial evidence in the record.

In short, despite any imperfections asserted by South Central, we discern that the trial court's analysis of class action certification issues was

---

[13] Kentucky precedent has long recognized "the delegation of the clerical task of drafting proposed findings of fact and conclusions of law under the proper circumstances does not violate the trial court's responsibility" so long as the trial court is thoroughly familiar with the record and does not abdicate its fact-finding and decision-making responsibilities. *See Bingham v. Bingham*, 628 S.W.2d 628, 629 (Ky. 1982). Despite the class certification order largely reflecting the proposed class certification order with some modifications, we are satisfied that the trial court was familiar with the record and did not abdicate its fact-finding and decision-making responsibilities in considering class certification issues based on our review of the record – especially recordings of hearings.

sufficiently rigorous and that its decision is not an abuse of discretion. *See*

*Hensley*, 549 S.W.3d at 446 (despite some minimal and conclusory findings of CR

23 requirements and the brevity of the class certification order, trial court went

beyond the pleadings in allowing discovery, briefing and oral argument on

certification issues; its analysis was sufficiently rigorous, and it did not abuse its

discretion).

### No Reversible Error in Trial Court's Rejecting Argument that Proposed Class Definitions Were Overly Broad

In addition to arguing that the trial court erred in finding all CR 23.01

and CR 23.02 requirements to be met, South Central argues the class definitions

are overly broad. For example, it points to the class definitions not excluding

business account holders despite the KCPA only recognizing a private cause of

action for those suffering losses from buying services or goods "primarily for

personal, family or household purposes[.]" KRS 367.220(1). It also contends the

class definitions are overly broad because they include persons whose unjust

enrichment and KCPA claims are barred by applicable statutes of limitations.

South Central also asserts that Johnson conceded the classes were

overly broad. It points to her statement in a brief to the trial court stating that even

if the 2019 contract amendment authorized multiple fees, the multiple fee class

"could be modified to reflect the shortened time period when the amendment was

not in place, or judgment could be entered in favor of the Class for one period of

time and for South Central for the other period of time." The bank also points to another statement in Johnson's briefs that: "The Court can easily exclude business accounts from the proposed class definition for purposes of the KCPA claim . . . ."

Johnson disagrees with the contention she conceded the class definitions were overly broad. She points out, the fact the trial court can modify the definition of the class in the certification order as the case proceeds pursuant to CR 23.03(3), does not mean that certification is improper. She further asserts: "The class definition need not be drafted with hyper specificity to account for every plausible exclusion or inclusion, especially in light of the trial court's broad authority, under CR 23.03(3), to alter or amend a class certification at any time before final judgment."

Johnson also suggests that South Central did not raise the overbreadth argument to the trial court and thus did not properly preserve this issue for review. But South Central argues that it did raise the issue of the proposed class definitions being allegedly overly broad, citing generally to its twenty-four-page response to class certification.

We agree with South Central that the overbreadth issue was preserved, although the lack of pinpoint citation to a specific page of a twenty-four-page document is not ideal. Nonetheless, South Central did argue the class

definitions had an "overly broad temporal scope" and failed to exclude business accounts despite the assertion of KCPA claims.

Although the overbreadth issue is preserved, no relief on this issue is merited at this time. As our Supreme Court stated in rejecting a similar argument that a class definition was overbroad: "The class definition identifies exactly who is and is not included in the class and provides the trial court with initial guidance as to how this lawsuit is to proceed." *Hensley*, 549 S.W.3d at 449. Similarly, the class definitions here identify who is included in the classes and provide the trial court with initial guidance as to how the lawsuit should proceed.

The focus of the class certification inquiry is whether the class is ascertainable and whether CR 23.01 and CR 23.02 requirements are met – not whether all class members will ultimately succeed on each claim asserted. As our Supreme Court aptly stated in *Hensley*:

> Merits questions may be *considered* to the extent-but only to the extent-that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. . . . Rule 23 requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. . . . A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action.

*Id.* at 437 (internal quotation marks and footnotes omitted).

Given the trial court's authority to alter or amend its class certification order under CR 23.03(3) and the fact that class certification does not amount to a finding that all class members shall recover on all claims asserted, we see no need to disturb the trial court's interlocutory class certification order[14] at this time:

> We note at this preliminary stage of this litigation, and as this litigation proceeds, that the trial court has several tools at hand to address the concerns of all those involved in this litigation. The trial court can create subclasses within the general class to address the concerns of the defendants in this case, including the allegation that this case really concerns three different and distinct groups of [plaintiffs] and that the case is unmanageable. If the current class definition proves to be unworkable or unascertainable, the trial court can modify the class definition. And, nothing prevents the trial court from decertifying the class at any point during the proceedings if the need so arises.

*Hensley*, 549 S.W.3d at 450 (internal quotation marks and footnotes omitted).

Nothing in this Opinion prevents South Central from filing any motion to alter or amend the class certification order to define the classes more narrowly or filing appropriate motions for dismissal or summary judgment. And we expect the trial court will appropriately rule on such motions and exercise its authority to create subclasses or otherwise correct any overbreadth in class definitions as necessary.

---

[14] As our Supreme Court recognized in *Hensley*, class certification orders are interlocutory but appeals from class certification orders are expressly permitted by CR 23.06. Such appeals from class certification orders are subject to "strict parameters" meaning that appellate courts will not engage in analyzing complex issues about the merits of the claims asserted but will simply determine whether the trial court erred in certifying the class based on CR 23 requirements. 549 S.W.3d at 436.

Further arguments in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolving this appeal from the class certification order.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's certification of the class action.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Byron E. Leet<br>Jordan M. White<br>Matthew L. Bunnell<br>Louisville, Kentucky | Andrew E. Mize<br>J. Gerard Stranch, IV, *pro hac vice*<br>Nashville, Tennessee |
| ORAL ARGUMENT FOR<br>APPELLANT: | ORAL ARGUMENT FOR<br>APPELLEE: |
| Byron E. Leet<br>Louisville, Kentucky | J. Gerard Stranch, IV, *pro hac vice*<br>Nashville, Tennessee |